**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| ADAM ZEBLEY, *et al.,* <br>      Plaintiffs, <br><br>      v. <br><br> UNITED SERVICES AUTOMOBILE <br> ASSOCIATION, *et, al.,* <br>      Defendants. | Case No. 24-12009 <br><br> Hon. Denise Page Hood |

**ORDER GRANTING THE DEFENDANTS'**
**MOTION TO DISMISS [ECF NO. 13]**
**and CLOSING ACTION**

## I.   INTRODUCTION

On August 1, 2024, Plaintiff Adam Zebley ("Mr. Zebley") initiated this action against Defendants United Services Automobile Association ("United Services") and one of its wholly owned subsidiaries, USAA Casualty Insurance Company ("USAA-CIC") and USAA General Indemnity Company ("USAA-GIC"). ("USAA"). [ECF NO. 1 PageID. 1].  In his complaint, Mr. Zebley alleges that USAA violated the Michigan No-Fault Automobile Insurance Act, breached the contract, and breached the implied covenant of good faith and fair dealing, as well as alleging unjust enrichment. [ECF NO. 1 PageID. 20-24]. On September 26, 2024, USAA moved to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6).

1

[ECF NO. 13].  The motion is fully briefed, and a hearing was held. For the reasons set forth below, the Court grants Defendants' Motion to Dismiss.

## II.    STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus***,** 551 U.S. 89, 94 (2007).  This presumption is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668.  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).  Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989*)*).  Nevertheless, the court "may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are

2

referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008).

### III.   FACTUAL BACKGROUND

On August 24, 2023, Mr. Zebley's father was injured in an automobile accident, resulting in his Personal Injury Protection Benefits ("PIP") claim being adjusted and paid by USAA. [ECF NO. 1, PageID.4].  Shortly thereafter, Mr. Zebley began providing attendant care services for his father. Mr. Zebley's father was prescribed attendant care that exceeded 40 hours per week, which Mr. Zebley had been providing to him. *Id.*  USAA reviewed, approved, and paid the subject 40 plus hours of attendant care claim at a straight-time hourly rate. *Id.*  The straight-time hourly rate did not include any premium pay for the overtime hours. [ECF NO. 1, PageID.5]. Mr. Zebley states that his father was receiving Michigan No-Fault PIP benefits from USAA under a Michigan No-fault automobile insurance policy. [ECF NO. 1, PageID.7].  Mr. Zebley stated USAA was required to comply with the No-Fault Act as the insurer responsible for the PIP claims but was said to be deficient for the purposes of calculating and not paying Mr. Zebley a reasonable overtime premium. *Id.*

## IV.   APPLICABLE LAW AND ANALYSIS

### A.   <u>Michigan No-Fault Automobile Insurance Act, Count I</u>

Michigan adopted the No-Fault Automobile Insurance Act, Mich. Comp. Laws § 500.3101, et seq, with a goal "to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." *Shavers v Attorney General,* 402 Mich. 554, 267 N.W.2d 72 (1978).

USAA argues that Count I, violation of the No-Fault Act should be dismissed because that they have no obligation to pay Mr. Zebley an overtime premium for the attendant care services to his father. [ECF NO. 13, PageID.20-21].

Mr. Zebley contends that USAA violated the Michigan No-Fault Act because USAA failed to properly pay for attendant care services provided by him to his father covered under USAA policies. Mr. Zebley claims he complied with all requirements of the insurance policies and the No-Fault Act, yet USAA underpaid and refused to pay the allowable expenses for these services. [ECF NO. 1, PageID. 20-21].

The Court is unable to reach that conclusion. The No-Fault Act is "a comprehensive scheme for payment, as well as recovery, of certain 'no-fault' benefits, including personal protection insurance benefits. ["PIP"]" *Citizens Ins. Co. of America v. Buck,* 216 Mich. App. 217, 223 (1996).  As set forth in MCL § 500.3107(1)(a), the No-Fault Act provides that an insurer is liable to pay PIP benefits

4

for "allowable expenses [defined] as, reasonable charges incurred for…services and accommodations for an injured person's care, recovery, or rehabilitation."  Plaintiffs must establish four elements before recovering PIP benefits for allowable expenses: "(1) the expense must be for an injured person's care, recovery, or rehabilitation, (2) the expense must be reasonably necessary, (3) the expense must be incurred, and (4) the charge must be reasonable." *See Douglas v. Allstate Ins. Co.,* 492 Mich. 241, 277–78, 821 N.W.2d 472, 493 (2012).

Neither Mr. Zebley nor USAA disputes whether services rendered by the defendants were for an injured person's care, recovery, or rehabilitation, nor do they contest that the services were reasonably necessary, or if the expense must be incurred. Rather, Mr. Zebley's sole allegation rests on the fourth prong: whether the rates paid were reasonable, specifically in regard to the inclusion of overtime for hours worked in excess of 40 hours per week.

Mr. Zebley does not have a right to overtime payments for attendant care under the Michigan No-fault Act. Pursuant to M.C.L. § 500.3107(1)(a) requires that reasonable compensation can be paid to lay providers of attendant care services. *See Bonkowski v. Allstate Ins. Co.*, 281 Mich. App. 154, 164, 761 N.W.2d 784, 791 (2008).  However, there is no hard and fast rule for determining the reasonable rate of compensation for unlicensed individuals like Mr. Zebley for providing health care services to family members. *Bonkowski,* 281 Mich. App. at 172.  "[T]he law does

not require that unlicensed individuals who have not earned a degree in a pertinent health care profession be paid the same compensation paid to licensed health care professionals." *Id*.

This Court's recent ruling in *Moore v. Auto Club Group,* No. 19-10403, 2025 WL 2265434 (E.D. Mich. Aug. 7, 2025), provides guidance here. In *Moore*, the plaintiff brought an action against his no-fault insurer seeking unpaid (PIP) benefits under Michigan's No-Fault Act. The dispute arose from the insurer's reimbursement for overtime attendant care services provided by unlicensed family members. Plaintiff argued that the insurer was obligated to pay those caregivers at rates comparable to licensed healthcare professionals. This Court rejected that argument, holding that the law does not require unlicensed individuals to be paid at the same rate as licensed professionals, so long as the insurer's payments are reasonable. Because the plaintiff failed to establish that the payments were unreasonable, there was no violation of the No-Fault Act.

Same is true here. Mr. Zebley fails to establish the payments he received were unreasonable. He argues that the determination of whether an insurance company's rate for family-provided attendant care services was unreasonable is a question of fact for the jury. [ECF NO. 17, Page105].  Mr. Zebley is mistaken. The Court in *Douglas* stated, "although this Court has not ruled on the issue, the Court of Appeals in *Bonkowski* stated that a commercial agency's rate for attendant care services is

6

irrelevant to the factfinder's determination of what constitutes a reasonable rate for a family member's provision of those services." 492 Mich. at 275. Therefore, assessing the reasonableness of the payments does not need to be determined by a jury because Mr. Zebley claim is whether a family attendant should automatically be assessed overtime under the act. The act does not so require. The interpretation of the act is a question of law for the court to decide.

### B.      Breach of Contract, Count II

In Count II of the complaint, Mr. Zebley alleges breach of contract but fails to prove exactly where USAA breached.[1]  [ECF NO. 1, PageID. 21-23].  To bring a successful breach of contract claim under Michigan law, the plaintiff must prove that "(1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Stackpole Int'l Engineered Prods., Ltd. v. Angstrom Auto. Grp., LLC*, 52 F.4th 274, 283 (6th Cir. 2022) ("Stackpole") (citing *Miller-Davis Co. v. Ahrens Constr., Inc.,* 848 N.W.2d 95, 104 (2014)). A valid contract requires five elements: (1) parties competent to contract; (2) a proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Id*. at 279 (citing *AFT Mich. v. Michigan*, 866 N.W.2d 782, 804 (Mich. 2015)); *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003) (citing *Thomas v. Leja*, 468

---

[1] The Court must note that Mr. Zebley has combined his Breach of contract claim and Breach of implied covenant of good faith and fair dealing claim under the same cause of action. However, the court will analyze these separately.

N.W.2d 58, 60 (Mich. Ct. App. 1990)); see also *Detroit Tr. Co. v. Struggles*, 286 N.W. 844, 846 (Mich. 1939). The party seeking to enforce a contract bears the burden of proving that the contract exists. *See In re Brown,* 342 F.3d at 628.

USAA argues that the breach of contract claim fails because it lacks the facts and details that a contract existed. Even assuming a contract did exist, Mr. Zebley did not submit a copy of the contract, and he fails to identify the contract, its specific terms, or the manner in which it was allegedly breached. There must be "[f]actual allegations describing the terms of the contract and how those terms were breached are necessary to survive a motion to dismiss; conclusory statements and unadorned recitations of the elements do not suffice." *Alshaibani v. Litton Loan Servicing, LP,* 528 F. App'x 462, 465 (6th Cir. 2013); *Carhartt, Inc. v. Innovative Textiles, Inc.,* 323 F. Supp. 3d 917, 922 (E.D. Mich. 2018).

USAA further argues that this Court should enforce the attendant care agreements as written in the policy, asserting that they contain no provision requiring payment of an overtime premium to Mr. Zebley. [ECF NOS. 13,18 PageID. 74-75,127]. The agreements provide a specific hourly rate, including hours in excess of 40 per week, which Mr. Zebley signed [ECF NO. 13-2,3 PageID.87,89]. Agreements must be enforced as written because "[a] fundamental tenet of contract law is that unambiguous contracts are not open to judicial construction and must be enforced as written. Courts enforce contracts according to their unambiguous terms

because doing so respects the freedom of individuals freely to arrange their affairs via contract." See *Rory v Continental Ins Co,* 473 Mich 457, 468 (2005).

Mr. Zebley argues that he properly plead a breach of contract claim because he satisfied the elements needed to bring a successful breach of contract claim under Michigan law. The Court disagrees. Mr. Zebley does not plead specific contract provisions between him and USAA for overtime pay. "Under the United States Supreme Court's heightened pleading standard, a complaint only survives a motion to dismiss if it contains 'sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). *Est. of Barney v. PNC Bank, Nat. Ass'n,* 714 F.3d 920, 924 (6th Cir. 2013)" Within his Complaint, Mr. Zebley alleges that "the above conduct amounts to a breach of his insurance contract and USAA [] is liable." [ECF No. 1, PageID. 21, ¶ 75.]. To support his position, Mr. Zebley relies on *Burkhardt v. City Nat'l Bank of Detroit*, 57 Mich. App. 649, 226 N.W.2d 678, 680 (1975). The Court is not persuaded. In *Burkhardt,* the plaintiff challenged the procedure that the bank used with monthly escrow payments for insurance and property taxes because the plaintiff alleged that the bank selected an accounting method allowing it to withhold more money than was needed. However, as this Court held in *Moore*, USAA's discretion not to pay Mr. Zebley an overtime premium

9

does not violate the attendant care agreement or the No-Fault Act. Therefore, Mr. Zebley fails to state a plausible breach of contract claim.

### C. Breach of Implied Covenant of Good Faith/Fair Dealing, Count II

Next, Mr. Zebley claims that USAA has breached the breach of implied covenant of good faith and fair dealing. [ECF NO. 1, PageID. 21-22]. "The covenant of good faith and fair dealing is an implied promise contained in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Hammond v United of Oakland, Inc,* 193 Mich App 146, 483 N.W.2d 652 (1992). However, to succeed on a breach of the implied covenant of good faith and fair dealing, at a minimum, there needs to be a contract in place. "Michigan does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing." *Fodale v. Waste Mgmt. of Michigan, Inc.*, 271 Mich. App. 11, 35, 718 N.W.2d 827, 841 (2006) (citing *Belle Isle Grill Corp. v. Detroit,* 256 Mich.App. 463, 476, 666 N.W.2d 271 (2003)).

USAA contends that Mr. Zebley cannot assert a free-standing good faith and fair dealing claim because the Attendant care agreements unmistakably expressed their respective rights by providing a set hourly rate for all hours and he does not allege any facts stating a plausible contract claim, which includes not attaching the "insurance contract." [ECF NO. 13, PageID. 77]. In response, Mr. Zebley urges the

Court not to rely on the attendant care agreement as there was a thirty-day period during which the agreement was not in effect. [ECF NO. 17, PageID. 115].  During the thirty-day period, he contends, an underlying insurance contract governs and should be recognized as USAA had the discretion to provide reasonable overtime value for the attendant care services. *Id.*  Since they did not provide reasonable overtime during the thirty-day period, it amounts to a breach of implied covenant of good faith and fair dealing. But even if the Court was to consider Mr. Zebley's argument, Mr. Zebley did not plausibly plead the insurance contract that he urges the Court to consider. Which it leaves the Court to construe the attendant care agreement and consequently the "implied covenant of good faith and fair dealing under existing law neither overrides nor replaces any express contractual term." *Kircher v. Boyne USA, Inc*., No. 166459, 2025 WL 938147, at \*3 (Mich. Mar. 27, 2025) (quoting *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 501, 892 N.W.2d 467 (2016)).

### D.    <u>Unjust Enrichment, Count III</u>

USAA makes two arguments: (1) that the existence of an express contract covering the same subject matter requires dismissal of the unjust enrichment claim as a matter of law; (2) that Mr. Zebley cannot allege the essential elements necessary to support an alternative claim of unjust enrichment when no contract exists.  [ECF No. 13, PageID79].  The Court agrees.

Under Michigan law, "[u]njust enrichment is defined as the unjust retention of 'money or benefits which in justice and equity belong to another.'" *Tkachik v. Mandeville*, 487 Mich. 38, 47–48, 790 N.W.2d 260, 266 (2010) (quoting *McCreary v. Shields*, 333 Mich. 290, 294, 52 N.W.2d 853 (1952) (internal quotation marks omitted.)) To succeed on a claim for unjust enrichment, a plaintiff must prove: "(1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *Karaus v. Bank of New York Mellon*, 300 Mich. App. 9, 22–23, 831 N.W.2d 897 (2013).

In this case, Mr. Zebley does not give any factual allegations that support his assertion. "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter." See *Ashcroft*. He argues the second prong of unjust enrichment is satisfied because one of USAA's subsidiaries retained benefits at his expense. [ECF NO. 17, PageID. 117-118]. In support of this proposition, he cites *Morris Pumps v. Centerline Piping, Inc*., 273 Mich App 187; 729 NW2d 898 (2006).

The Court is not persuaded. In *Morris*, plaintiffs brought an unjust enrichment claim against a replacement contractor. 273 Mich. App. at 191. Plaintiffs supplied the contractor with materials for a construction project. *Id* at 190. The contractor went out of business, causing the plaintiffs to hire a replacement contractor. *Id*. The replacement contractor used the leftover materials from the first contractor to

12

complete the construction job. *Id*.  However, neither the replacement contractor nor the original contractor paid for the materials. *Id*.  As a result, the plaintiffs filed suit, asserting a breach of contract claim against the original contractor and an unjust enrichment claim against the replacement contractor. *Id*.  In this case, USAA directly made the payments to Mr. Zebley pursuant to the attendant care agreement and thus cannot be regarded as a "third-party" beneficiary. In addition, Mr. Zebley does not plead sufficient factual allegations that show that the USAA business structure allowed them to benefit from him as a third party.  Because "[USAA] operates through a complex web of affiliates, franchisees, … and other authorized outlets," it does not allow Mr. Zebley to raise conclusory statements.  *Solo v. United Parcel Serv. Co*., 819 F.3d 788, 800 (6th Cir. 2016)(quotations omitted). "[That] is insufficient even under the lenient pleading standard of Federal Rule of Civil Procedure 8(a)(2), which does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." See *Ashcroft*.

Lastly, Mr. Zebley contends that Attendant Care Agreements are a contract only between the Plaintiff and the No-Fault Insurer, and there is a thirty-day window where the only operating contract was the No-Fault Contract, again between Plaintiff and the No-Fault Insurer. [ECF NO. 17, PageID. 116-117].  This argument fails because the operating contract alleged by Mr. Zebley is not attached to the complaint. "[A]lthough plaintiff pleaded a breach of contract claim, he failed to attach a copy

13

of the contract as an exhibit to his complaint as required by MCR 2.113(F)(1)…[b]ecause the exhibit would be considered part of the pleading for all purposes, MCR 2.113(F)(2), and is properly considered in a motion pursuant to MCR 2.116(C)(8),2 we find that plaintiff failed to state a claim based on the contract when plaintiff failed to produce said contract." *Frame v. Royal Oak Twp. Fire Dep't*, No. 239921, 2003 WL 21921178, (Mich. Ct. App. Aug. 12, 2003)(quoting *Maiden v. Rozwood,* 461 Mich. 109, 119; 597 NW2d 817 (1999); MCR 2.116(C)(8)).

## V.    CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion to Dismiss **[ECF No. 13]** is **GRANTED**. This action is DISMISSED and CLOSED on the docket.

s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  March 31, 2026

14